THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

FILED
OCT - 1 2013
CLERK, US DISTRICT COURT
NORFOLK, VA

**UNITED STATES OF AMERICA**

v.  **CRIMINAL ACTION NO. 4:13cr65**

**KENNETH PUTT,**

   **Defendant.**

*MEMORANDUM OPINION AND ORDER*

Before this Court is the Defendant Kenneth Putt's Motion to Suppress. Plaintiff has filed a Memorandum in Support of that motion, and the Government has filed a Response. Defendant has also filed a Rebuttal Brief. The Court held a hearing on the Motion to Suppress on September 30, 2013. For the reasons discussed below, Defendant's Motion to Suppress is **DENIED.**

**I. PROCEDURAL AND FACTUAL HISTORY**

On June 12, 2013, a Grand Jury returned a single count indictment charging Defendant with knowingly, intentionally, and unlawfully manufacturing over 100 marijuana plants in Mathews County, Virginia, on April 23, 2013, in violation of 21 U.S.C. § 841(a)(1). The indictment also included an allegation of criminal forfeiture, 21 U.S.C. § 853.

The Indictment and the instant Motion to Suppress both stem from a single incident at Defendant's home. Firefighters responded to a fire there between 1 and 1:15pm. Mem. Supp. Mot. to Suppress, Ex. 1. Assistant Fire Chief Charles Shaw of the Mathews County Volunteer Fire Department entered the home to respond to reports of smoke coming from the attic.

1

Defendant had told him when he arrived that the fire was on the outside of the home. *Id.* at Ex. 2. He noticed PVC piping and green plants in one of two rooms at the top of the interior stairs; smoke blocked visibility into the other room. *Id.* Shaw used an ax in the ceiling of that room to gain access to the attic, observed a fire there, and then exited the structure to change his air bottle. *Id.* He re-entered through an attic window, extinguished several hot spots in the attic, and then exited through the same window. *Id.* After a short break, Shaw entered the house for a third time with a thermal imager, which he used in the room previously blocked by smoke to look for hot spots. *Id.* He found one, but saw that more PVC piping and plants were blocking access to the spot. *Id.*

Shaw then exited the house, approached Lieutenant William Riley of the Mathews County Sheriff's Office, and asked him to enter the home. *Id.* Police had initially arrived at the scene at approximately the same time as the fire units, and more law enforcement units continued to report to the scene. *Id.* at Ex. 1. Deputy Riley did not arrive until approximately 2pm, which Defendant notes is about 15 minutes after the fire was reported to be under control. *Id.* at 1. Shaw reports that he told Riley that "[he] had something to show him," *id.* at Ex. 2; Riley reported in the warrant affidavit that Shaw asked him to come inside "to see where the fire had started." Mot. to Suppress, Ex. 2. Riley entered the home and saw approximately 100 marijuana plants in a hydroponic system in each of the upstairs rooms. *Id.* Shaw told him that he might have to damage them to fight the hot spots; Riley told him to do what he needed to fight the fire, but to try to minimize damage to the growing system. Mem. Supp. Mot. to Suppress, Ex. 2. Riley then left Defendant's home and used what he had seen in the home to obtain a search warrant. Mot. to Suppress, Ex. 2. He executed the warrant and seized hundreds of plants and several pounds of marijuana. *Id.*

## II. DISCUSSION

Defendant seeks to suppress all of the material seized at his home, as he contends it was obtained as a result of Riley's unconstitutional warrantless search of his home. The Government relies on two exceptions to the warrant requirement: exigent circumstances and inevitable discovery. The Court relies on the second exception to deny the Motion to Suppress, but also notes that the first exception may provide alternate grounds to deny it as well.

### A. Exigent circumstances

First, the Government contends that a warrant was not required because the search was justified by a well-established exception to the warrant requirement: exigent circumstances, in this case to respond to the fire emergency and to prevent the imminent destruction of evidence. *Ker v. California*, 374 U.S. 23 (1963). The actions of Shaw himself would undoubtedly be covered by this exception had he, for example, seized the marijuana himself, as it appears that he reasonably believed that his own firefighting efforts to combat existing hot spots were necessary and that doing so might damage the evidence. *See also Michigan v. Tyler*, 436 U.S. 499, 509 (1978) (firefighters do not need a warrant to fight a fire and investigate its cause, and "[i]mmediate investigation may also be necessary to preserve evidence from intentional or accidental destruction").

But under either account of what Shaw told Riley, Riley appears to himself have been unaware of the relevant exigency when he entered the home. He did not know that he was being called into the house to potentially preserve evidence of illegal activity. And the Fourth Circuit has held that "the person making entry must have had an objectively reasonable belief that an emergency existed that required immediate entry," and has looked to the following factors:

> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the officers' reasonable belief that the contraband is about to be

3

> removed or destroyed; (3) the possibility of danger to police guarding the site; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband.

*United States v. Yengel*, 711 F.3d 392, 397 (4th Cir. 2013) (quotations omitted). This language implies that the officer must have had an actual belief that was objectively reasonable, although the Supreme Court has repeatedly held that an "officer's subjective motivation is irrelevant." *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006). *Id.* ("An action is reasonable under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed objectively, justify the action." (quotations omitted)).

Although Riley's actions would have been justified by exigent circumstances had he been aware of all of the facts (as defense counsel conceded at the hearing on the Motion to Suppress), any subjective belief about an exigency on Riley's part would have been objectively unreasonable to the facts known to him at the time. *See United States v. Leveringston*, 397 F.3d 1112, 1116 (8th Cir. 2005) ("[W]e consider the circumstances that confronted the police at the time of the entry."). He did not know that he was being asked to look at evidence that was likely to be destroyed, and it is unlikely that he thought his help was needed to combat the fire. Accordingly, Defendant relies primarily on Riley's actual knowledge, noting that Riley "did not enter the house to fight the fire," that "the fire was under control when he arrived on the scene," and that "he did not know there was any evidence that could have been destroyed." Mem. Supp. Mot. to Suppress 5.

Because of the lack of an objectively reasonable belief that would have justified Riley's warrantless entry, the Court declines to deny the Motion to Suppress on those grounds. However, a doctrine that the Government does not cite might provide grounds for denial of Defendant's Motion on exigency grounds. The "collective-knowledge" doctrine, also known as

4

the "fellow officer" rule, might allow imputation of Shaw's knowledge of the exigency to Riley. The Fourth Circuit has described the doctrine as holding "that when an officer acts on an instruction from another officer, the act is justified if the instructing officer had sufficient information to justify taking such action herself; in this very limited sense, the instructing officer's knowledge is imputed to the acting officer." *United States v. Massenburg*, 654 F.3d 480, 492 (4th Cir. 2011). *See also Morelli v. Webster*, 552 F.3d 12, 17 (1st Cir. 2009) (holding that the doctrine applies to police officers "engaged in a joint mission" and "derives from a felt sense that officers acting in concert actually do, and are entitled to, assume that fellow officers are acting in a manner consistent with their legal responsibilities").

This Court, however, has not found a case consistent with the circumstances of the instant case, in that the doctrine would be applied to knowledge shared between a police officer and a firefighter rather than between police officers. For that reason, defense counsel rejected the doctrine at the suppression hearing. But as long as the officers are acting in concert and are both government officials, there seems good reason to apply it. *Cf. Tyler*, 436 U.S. at 511 (noting, in a case involving warrantless entry by a fire chief and a police detective, that "an entry to fight a fire requires no warrant, and that once in the building, officials may remain there for a reasonable time to investigate the cause of the blaze").

### B. Inevitable Discovery

Second, the Government relies on the inevitable discovery doctrine, which provides that: "If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale [of the exclusionary rule] has so little basis that the evidence should be received." *Nix v. Williams*, 467 U.S. 431, 444 (1984). The Government reasons that had Riley not entered the

home, Shaw would have told him (or another police officer) about the marijuana, and Riley would have used that information to obtain a search warrant. The Government contends that this chain of events satisfies the Fourth Circuit's rule that "the fact making discovery inevitable must arise from circumstances other than those disclosed by the illegal search itself." *United States v. Thomas*, 955 F.2d 207, 211 (4th Cir. 1992) (quotation omitted). The firefighters had already lawfully discovered the incriminating evidence that would form the basis of a warrant before Riley entered Defendant's home.

Defendant's only response is that this chain of inferences is overly speculative and attenuated. He cites *United States v. Allen*, 159 F.3d 832 (4th Cir. 1998), where police searched a duffel bag in the passenger compartment of a bus that they improperly identified as abandoned without a warrant or probable cause. At the suppression hearing in that case, the district court asked the officer if she would have inevitably discovered the contraband in the bag anyway. She said that she "could have" and "would have" had a drug dog come smell the bag and would have applied for a search warrant had the dog alerted. But she also stated that "she had never brought a dog on the bus in the past" and that police policy was to simply declare unclaimed bags abandoned and search them. *Id.* at 837. The Fourth Circuit rejected the district court's application of the doctrine because it was unlikely that police would have used the dog as they claimed in light of the lack of police department policy to do so. *Id.* at 840; *id.* at 842. Moreover, with or without the dog, "nothing indicates that the officers *ever* contemplated obtaining a search warrant." *Id.* at 843. The occurrence of the alternate chain of events "must have been likely, indeed 'inevitable,' absent the government's misconduct." *Id.*

Here, however, multiple facts indicate that the police would have inevitably obtained the marijuana plants by lawful means—*i.e.*, with a warrant based on information from firefighters

6

who had seen the marijuana. First, it is not in doubt whether the firefighters would have seen the marijuana, as the evidence was already lawfully discovered by a firefighter before any warrantless search occurred. Second, the firefighter who discovered it testified that he immediately decided to take action in concert with the police, indicating that their normal response when encountering contraband is to notify police. Further, Shaw testified at the suppression hearing that his practice and that of those he supervised was to notify law enforcement when contraband is discovered. And both he and Riley testified that the fire and police departments have a close working relationship. Third, Riley sought and obtained a warrant once they were aware of marijuana, suggesting that it is likely that police policy is to obtain a warrant in similar circumstances. Therefore, the inevitable discovery doctrine clearly provides an exception to the warrant requirement in this case.

## III. CONCLUSION

For the reasons previously stated, Defendant's Motion to Suppress is **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the parties.

**IT IS SO ORDERED.**

Raymond A. Jackson
United States District Judge

Norfolk, Virginia
October / , 2013